All rise. Here to give you security is Honorable Elfport, 2nd Judicial District. He's now back in session. So to adjournment, the Honorable Susan F. Kletzenschmid. Please be seated. This case will be done to the death of a student at 1034, Steve Conaghan, a Berkeley Paper Center Olympic athlete, v. City of Harvard, and all defendants' felons. Are you on behalf of the defendants' felons, please stay off the podium. Are you on behalf of the Olympic Athletes, attorney Mr. John W. Gaffney. Mr. Zimmer, whenever you are ready. May it please the court, counsel. My name is Austin Zimmer. I represent the City of Harvard, the Appointee Commission of the Zoning Ordinance matter, and our appeal is based on the decisions of the lower court. We have two primary arguments today. The first is that under section 65 ILCS 5-11-13-25, that was the one count that plaintiffs in the lower decision sued under. That does not create an independent cause of right. And our second argument is that even if this court finds it does create an independent cause of right, the trial court did not correctly examine the city's decision under a rational basis standard and instead submitted its own judgment. You say in your briefs that plaintiffs was required to file under the administrative review law, correct? If they wanted to challenge the decision, correct? We made that argument. Yes, and when would they be required to file? And what time limitation would be applicable? Under the Administrative Review Act it would be 35 days. It would be, I would think it would be after the zoning decision. I had examined, you know, the cases that counsel cited in his brief that talks about the legislative decision isn't subject to the Administrative Review Act. So it may not be that the Administrative Review Act would have been their best course of action. But I don't agree with his position that if this statute doesn't create a valid cause of action that they're left without a way to the courthouse. There's many other actions that they could have filed. In fact, was there an application for a variance of special use or anything that went before the zoning board? Or was it a request to continue the nonconforming use that had been rehabilitating over a period of time? What it was is there was a decision by the city's hearing officer that the use was discontinued. And that occurred in July of 2012. Then in May of 2013, the owners then appealed that decision of the hearing officer to the zoning board. So what was before the zoning board was an appeal of the decision of the zoning hearing officer. So it wasn't as contemplated in the statute 1113-25. It wasn't a petition for a special use of variance or rezoning. It was just an appeal of the hearing officer's decision. And it was never characterized in anyone's conversations or in rulings as an application for anything, correct? Correct. But the city ruled on it by way of an ordinance. They did. Now, I take it that's pursuant to their plan or their statute that they send these things to the city council for an ordinance, correct? Correct. I mean, the case law, the council cites Hawthorne. And then we have Ashley Libertyville LLC out of this court that says that when there's an ordinance, that is a legislative act, not subject to administrative review. You're correct, Your Honor. I think ultimately our argument fails on the Administrative Review Act. And I would agree with you. I think they could have possibly brought it maybe earlier after the zoning officer's decision, potentially. But I don't think the Administrative Review Act is ultimately the course you should have taken after examining everything. I think, but there are other avenues. And the avenue wasn't 11-13-25. It doesn't create an independent right. The other avenues would be, if you look at this court's Arcedure case, that case came to you on an appeal. And in that case, there wasn't an Administrative Review Act filed. But the other count was a writ of certiorari. That would have been one action that the owners could have filed. Another they could have brought, the claims involve violation of substantive due process. They could have potentially brought a cause of action, a minimum constitution. They certainly could have brought a federal lawsuit or section 1983 for violation of substantive due process. And one of the cases that counsel cites in this brief, I believe it was from the 70s, the city of Springfield case. That was a case where they said the Administrative Review Act was not applicable to the legislative act. But, however, I think that was an action for decorator relief that was brought. So I don't agree with the owner's argument that if 11-13-25 doesn't create a cause of action, that they don't have an action. I think there's plenty of actions. And ultimately, I don't think our argument that the Administrative Review Act was the proper action is persuasive. But I do think there are many other actions that they could have brought. And, therefore, by this court ruling that 11-13-25 doesn't create a dependent cause of action, you're not preventing the owners from having their day in court. Our savior did have, was a petition for cert on the special use. But there is some pretty broad language in there from this court concerning what the rights are under section 25, correct? Well, there's language in there, but I think the important thing to consider when looking at our savior case is, as I stated before, our savior came to this court on an appeal. And in that case, the plaintiffs filed an action under the Administrative Review Act and under the writ of cert. There was no action under 11-13-25. So this court was never asked to consider the issue of whether it created a dependent cause of right. However, the First District was asked that specific question in the Dunlop case. In the Dunlop case, the First District examined that question, does this create an independent cause of action? And that court ruled that it does not create a dependent cause of action. And why I think that decision should be persuasive for this court is, what the Dunlop case did is it examined the legislative history of 11-13-25. And it's legislative history that this court is familiar with from your Millennium Maintenance Management case. And when you look at why the legislator decided to pass 11-13-25, it was a response to the Supreme Court's decision in the Claren case. And the Claren case subjected municipalities to heightened scrutiny for their zoning hearings. And if you look at the language that the legislator was using when they passed this, it was a direct reaction to the Claren. Our state senators and representatives were concerned that municipalities would not have the resources to conduct many trials and not have the resources to make sure they comply with this heightened scrutiny. So that's what caused 11-13-25 to be passed. It was about the standard of review. And there's language when the statute was passed is they wanted the review to be de novo and all zoning actions to be treated with deference to the legislator. That's why it was passed. It was not passed to create new rights. And when the first district was asked about examining, that was their conclusion that they came to. So I don't think our savior supports the proposition that it does create an independent cause of action because it was never examined in that context. Let me bring you back to this point I raised earlier. And you now conceded your argument about the administrative review law is not persuasive. But Section 13-13 says that all actions regarding zoning are subject to administrative review. Correct? Section 12. All final administrative decisions of the Board of Appeals, well, here you have a planning commission, are subject to the administrative review law. So if that's true, when would the final action be taken? Would it be the vote by city council or would it be the zoning commission? It would be my position it would probably be the vote by the city council. So they would have under 11-13-25, then they would have 90 days, not 35 days under the administrative review law. That's what that statute says. And it's kind of confusing because if you look at sequentially, you look at the act, Section 1 sets out the objectives and powers and the limits. Section 2 sets forth enforcement. Section 13-13 discusses that all final administrative decisions are subject to the administrative review law. Section 13-15 describes proceedings to present a violation by a neighbor who's suffering from a zoning violation. And then 13-25 says the title is actions subject to de novo review due process. So sequentially it seems that the General Assembly at least, by putting that statute of limitations in Section 25, at least contemplated actions. Is it just purely setting forth the standard of review or are they saying when the final administrative action is taken by city council, then you have 90 days? I think based on the legislative history, it was a direct response to the McLaren case. So it was just for setting a standard of review. But if there are some of the actions that I talked about earlier that I think would be proper to file, if the Administrative Review Act is not the proper vehicle, it still sets out 90 days to file those actions, 90 days. When that final decision is made by the municipality. Correct. So it would have had 90 days to file a subset of due process action under the Illinois Constitution. Some sort of, you know, declaratory action, 90 days. So I think that 90 days can be applied to when they file some of the other actions that I talked about would be a vehicle to bring to suit and not 11-13-25. However, even if this Court holds otherwise and does rule that 11-13-25 creates an independent cause of action, the city should still prevail on this because its actions did not violate the owner's subset of due process rights. When we're examining a zoning hearing under the de novo standard of review that 11-13-25 lays out for courts, subset due process requires the courts to examine whether the zoning action was arbitrary, or excuse me, was not arbitrary. Essentially, there has to be a rational basis for the city's actions. Can I ask you a question on that, based on the timeline here? Sure. I mean, the city gives this gentleman a building permit on July 14th of 2010, and that building permit's good for a year, correct? Correct. And on June 30th of 2011, within that year time, the man applies for and receives a final occupancy permit. Now, I understand your argument is that's for the second floor and not for the first floor. But we have the same inspector involved in all this stuff. I mean, the person who is doing this occupancy permit, I think it's the same name, as I recall, and the person who ultimately discontinues the nonconforming use. So this one inspector goes into this house, sees that they're building it out for a two-flat. You've got two furnaces, you've got two hot water heaters. The guy's putting a lot of money into this thing. And then gives him a permit. Yeah, you know what, go ahead. Have one family on the second floor while you continue the second floor. And then, what, a year later, discontinues the nonconforming use and says, you know what, guess what? Kind of like the old Emily Lutellian from Saturday Night Live. Never mind. Never mind that we gave you that occupancy permit. Explain to me how that can't be perceived, at least as arbitrary. I think you have to look at the whole picture and the whole timeline. And what's important to note is the city's code is very clear. And that if a use is discontinued for a period of 12 months, you lose that nonconforming use. And this property's use as a two-flat, as a multifamily residence, by March 2010, no one was looking at that. They don't get the building permit to do the work until July 2010. And then it's not until July 2012, so over two years, almost 30 months since the use was discontinued, that the city zoning officer declares that it has been discontinued and the nonconforming use is lost. And then, so that was July of 2012, the owners don't do anything. The owners wait until approximately nine months later, until May of 2013, to petition the ZBA to appeal the city's zoning officer's decision. So by the time it gets to the city council, June of 2013, we have a period of 40 months where the use has been discontinued and abandoned. So the use was discontinued in March of 10, correct? Correct. But then in June of 11, over a year, that use was discontinued for over a year. Wouldn't the city have, by all rights under the code, been able to say, you're past a year, I'm not giving you this occupancy permit to use the top floor? Wouldn't they have been within their rights to say it at that point in time? They could have done that, yes. They could have done that, they didn't, and they gave them the occupancy permit with the, we can only assume the intention that they would complete the work on the whole building. However, they failed to do so. They failed to seek any extensions, they did nothing, they didn't continue the work, and then it stayed vacant, which led the city's zoning officer to make his opinion that it would be used to discontinue it. Did it appear, though, that there was still work to be done and that there may be a continuation of that work? So does, when it says the nonconforming use of the structure has been discontinued, if there is damage, if there is fire, if there is hurricane, if there is tornado, and it takes longer, once they start the rebuilding process, isn't that a continuation of the nonconforming use? Or an intention to continue the nonconforming use? Well, the, I would say, I would say no. When you look at the city ordinance, it's important to note that intent is not a requirement. That was an error that the lower court focused on was the intent. Well, the ordinance does say or whenever there is evident of clear intent on the part of the owner. That's the or part. Correct, and how I read that is it being disjunctive, not conjunctive, and because whenever a nonconforming use of a building or structure or part thereof has been discontinued for a period of 12 months, or are clear intent, so the clear intent could come a lot earlier. You could have a clear intent after one month or two months, but I think the ordinance is clear. If the use has been discontinued for 12 months, then the city can take away the nonconforming use. And the owner is on notice of that, that it can end at any time. The city can come in, correct? Correct. And these arguments or these questions were posed before the Planning Commission. There was an opportunity for a testimony, correct? That is correct. And the Illinois Supreme Court has said that zoning is primarily a legislative function. It's within the province of the local governmental bodies to determine the use of land and establish zoning classifications, enforcement, etc., correct? That is correct. And that's what happened here? Yes, absolutely. But for the building commissioner or whoever that person was, kind of giving them to believe that you've got this permit, keep going. And I think, you know, what's important is that permit, that initial permit they got to do the building, it expired after a year, and they never came in. There was testimony from the owner that the owner is at trial. They never came in and asked to extend that building permit. So, you know, also it's their property and it's their responsibility. And if they weren't able to get the work done, they should have come in, asked for an extension of the building permit. And that did not happen in this case. How many building enforcement officers does Harvard have? That is a question I do not know the answer to. Well, let's assume it's not more than two because it's not a community of very many people. I agree. He's visiting on a regular basis. He knows what's happening. And why is he letting it go on if the permits expired? I don't think there was any evidence of any why the permit was expired of work being done on the property. So I'm not sure if work was ultimately done after the permit expired. We don't even know if the bond form was ever completed, correct? Correct. There was no evidence of that in the record? Correct. All right. You'll have an opportunity to respond. Thank you. Thank you very much. Mr. Gaffney. Good morning. Good morning. May it please the court, counsel. My name is John Gaffney. I represent the Appalachians in this matter, Steve Conahan and Gertrude Burstein. And as I prepared to argue today and read through my briefs and read through the other side's briefs in this matter, I kept coming back to Acker's reason. And I'm assuming you're familiar with that. It's the process of when among competing hypotheses, the one with the fewest assumptions is the one that's probably correct. In other words, the simple controls over the complex. And here, I believe this court said what it meant to say in Our Savior. And very clearly in Our Savior, this court held that the statute, 111325A, wasn't just a standard of review. It was a new cause of action that allowed you to sue legislative bodies. Did we refile the complaint on behalf of the plaintiff? I apologize. I mean, the plaintiff filed a complaint in Our Savior. And part of it was administrative review, and we dealt with that in one way. The other part had a special use, and that's the one that we applied Section 25 to. Yes. But that was brought under a writ of cert. Your pardon? So, I mean, that wasn't brought under Section 25. In that case, no, it was not. So, basically, was this court rewriting the complaint and saying, when you go back to the trial court, forget about that petition for cert. We're basically telling you that now you can proceed on the basis that was never plotted. I don't believe that. I'm just saying, I mean, Charles's argument is that it's a standard of review. It's basically, we sent you back, have your hearing on your petition for cert, but this is how you're going to do it. Here's the road map of how you're going to do it. And didn't, because we weren't asked, is whether this was a private cause of action. I don't, I will admit that there was not a specific issue of does this have a private cause of action built into the statute. I believe you're correct. But as you read the decision in our seizure, it clearly says that it brought up a private cause of action. And I understand the concern about you putting something back to every plea and bring it back. That would seem to be a violation of judicial economy. You know, you talk about the decision. The decision that's at issue here is the trial court. And the trial court didn't really give any analysis as to why he believed section 25 created a new cause of action. He just simply said to the city's attorneys, I disagree, motion's denied. That was his, the entirety of his analysis, correct? He, at the time of the trial, you're correct. Remember, there were, there was a motion to dismiss. I know there were pleadings. I've looked at those. And the other thing is that, as Justice Berg just noted, in our seizure, there was no motion to dismiss. And 111325 is not at issue. What was at issue was a standard of review, correct? Correct. And our court, Justice Shostak, I think was the author, said, indeed, it is not a standard of appellate review at all. Rather, it describes a wholly new action, not new cause of action. It says new action under which a plaintiff may challenge his own decision in the same manner as a plaintiff may challenge a legislative action. And then goes on to discuss the sale factors and the way we look at a legislative action, correct? Correct. But you're arguing that it stands for the proposition that a trial court can reexamine the entire actions of his own board, correct? That's your argument. It is my argument. But that's inconsistent with what we've said in our seizure. Our seizure said it's de novo review as a legislative decision. But I think you also have to read that in the context of Hawthorne as well. Because Hawthorne clearly says that legislative actions are not reviewable under the Administrative Review Law. They're reviewable by separate causes of action. How do you respond to plaintiffs' arguments regarding Dunlap, Fiegel v. Chicago Plan Commission, and Connell Association of Commonwealth Plaza v. City of Chicago, all of which stand for the proposition that directly addressed this provision, that it creates no independent cause of action? How do you respond to that? I think the biggest problem, let me take Dunlap as an example. I think the biggest problem in Dunlap when you read the Dunlap decision is the court didn't really go very far into 111325A. What they said is under 111315, there is no private cause of action. And 111325A is bounded by 111315. And therefore, there's no private cause of action. I don't believe the court in that case went deep enough. Well, in that case, they were trying to suggest, the plaintiffs in that case, that 111325 permitted them, as adjoining landowners of a property or land violation, that it created an independent cause of action. So it was directly at issue in that case. I agree. And the court said, no, it's not. And then again, Fiegel and Congress Association, how do you address those cases, which also said head on, it does not create an independent cause of action? I think the problem with all of those cases is when you read the Supreme Court cases in Hawthorne, you read the legislative change that was a result of the Koehler decision. When you read all those together, I think it's clear that the legislature wanted there to be an independent cause of action under 1125A. Because you've got to remember, the Supreme Court had said, well, even if it's a legislative body taking these administrative actions, that becomes reviewable under the administrative review law, because they're taking administrative actions. Then the legislature turned around and changed the statute and actually amended it twice to make it clear that actions by a legislative body are reviewable as legislative actions. And under Hawthorne, legislative actions are not reviewable under the administrative review law. They're reviewable as separate causes of action. So in essence, respectfully with Dunlop, I think they missed the point of the statute. The point of the statute was the response to the Supreme Court's decision. Let's compare. The Illinois Constitution, Article 6, Section 12, makes it very clear. Circuit courts have jurisdiction over administrative actions only as provided by law, correct? Correct. And if you compare the subsections in the Zoning Act, when they do create a cause of action, for example, in Section 15, the General Assembly set out the relief that can be given, correct? The orders that the trial court can enter, and even attorney's fees for a successful owner who sues under 15, correct? Correct. But there's no such provisions for that in 25, correct? That is correct. So if the General Assembly intended to create a new cause of action, in other words, give jurisdiction to the circuit courts, wouldn't they have done what they did in 15 and make it express, make it clear? Respectfully, no. Because I think at the time that the legislature was dealing with 111325A, they already had a case law that said legislative actions are reviewable not under the administrative review law, but under a separate cause of action. And they were clarifying basically your right to bring those actions. I don't believe that the fact that they didn't say specifically what actions you could bring and what your remedies were would have been necessary. Because at the time that they changed it, it was clear that legislative actions are dealt with as legislative actions through separate causes of action, not through the administrative review law. Would you agree that in determining legislative intent, it's appropriate for us to look at other provisions of the act? Absolutely, yes. And would you also agree that your reading would be inconsistent with Gruba, where the Illinois Supreme Court said zoning belongs to municipalities. Those decisions, other than constitutional questions, are uniquely for municipalities, not for the circuit courts. Would you agree with that? I would agree with the general proposition that that is up to the municipality. And why should a circuit court be reviewing the fact questions that are decided by a zoning commission? Because I believe that's what the legislature intended them to do under section 111325A. Well, that would be inconsistent with what the Supreme Court said in Gruba, wouldn't it? Are you familiar with Gruba, the bleacher case? I am, and yes, you're correct. And that was a battle between the school districts and the municipalities, and the municipalities prevailed. And the Supreme Court, in very strong language, said this belongs to the municipalities. Other than constitutional questions, we stay out. I agree with you, Your Honor, that that would be correct. What's the constitutional issue here? I don't believe there is a constitutional issue. You're just asking us to affirm the decision of the trial court who made fact determinations, correct? Respectfully, no, that's not all that we're really looking at here. I think what we're looking at is how are zoning decisions made by a municipal body to be reviewed? They're to be reviewed de novo. I believe Your Honor is correct about that. What does that mean? I believe when they say it is to be reviewed de novo, you're to take all the facts underneath. You're allowed to present new facts, as they mentioned in Our Savior. What the court said in Our Savior is not. The court said in Our Savior, according to Millennium Maintenance, and Millennium Maintenance discusses what? The LaSalle factors, correct? They do. Which is a constitutional issue, which the trial court here said that the city's action was arbitrary, which would lead me to believe that the trial court was saying that there was some kind of a due process violation. I don't necessarily know that that would be correct simply because Even if you were to have this private right of action and you were able to present new facts, as you're arguing, it's only related to the LaSalle factors, which have to do with substitute due process. I believe you're correct, yes. So then if this doesn't involve a constitutional question, then why are we here? I believe you raise a good point, Justice. And I think the problem is the court applied the LaSalle factors, went through those in its decision, and perhaps I'll have to amend my argument to say that there are constitutional issues involved here of substitute due process, which the court applied under the LaSalle factors and found in favor of the plaintiffs. The question here really is the vehicle. And you argue in your brief that if I don't have administrative view and I don't have a private independent cause of action under Section 25, I never get in the courthouse door. I could have the most egregious constitutional violation in the world, but I don't get in the courthouse door. But realistically, what was to prevent or prohibit your client from filing a three-count complaint? One under Section 25, one for an assert, one for a declaratory judgment. And there are cases that talk about quasi-judicial acts, that's when you petition for cert, and quasi-legislative acts, which this would fall under certainly, and then some, you petition for declaratory judgment. So what was to prevent your client from filing a declaratory judgment count that incorporates Section 25's de novo review in order to get in the courthouse door and have your de novo here? I think it depends on the facts. I mean, the honest answer is nothing prevents my client from doing that. But I don't believe that that was an issue that was raised before the trial court below. There was no issue. The only argument that was raised by the appellants in this matter in the trial court was there is no private cause of action under this. They didn't raise any of those issues, you know, that they should have brought this, they should have brought that. And quite honestly, I think that they waived that for the purposes of this court. I believe they did, in their response of pleadings, indicate that your relief should have been under the administrative review law, correct? Yes. And I believe that that, in looking at the statute and looking at Hawthorne, is incorrect. But they did not raise that the plaintiff raised the wrong cause of action. That was waived in the trial court. It was never raised. The only issue that they brought up in the trial court was this doesn't have any private cause of action because you have to go under the administrative review law. It's a question of jurisdiction. They don't have to raise it in the trial court. They can raise it here, correct? Correct. Correct. And they're arguing that there's no jurisdiction, that there's no private cause of action that shouldn't have been here under the Constitution. The General Assembly, by law, can provide for jurisdiction, but they haven't in this case. I believe that that is their argument. And I do believe that when you read Hawthorne in connection with all the other Supreme Court cases dealing with how you review legislative decisions, I do think it does show that there is a private cause of action. And one thing that's important to remember here, factually, is there really was no decision. And you raised it during the initial argument that when does the time start running? When the administrative decision is made by the code officer or... Or approved by city council.  And that, I think, is the problem because until the point that the city council actually made a decision, it was all administrative to that point. And then the city would come in and say, if you filed, they'd say you didn't exhaust your administrative remedies and the case would be dismissed, correct? That would be my argument. I guess what I would say is this, is had we brought this as a different cause of action under the Administrative Review Law, I would anticipate a motion to dismiss saying, well, you can't bring this under the Administrative Review Law because it was a legislative action. And that is what I think really becomes the problem. Ultimately, what happened here was a legislative decision by the city of Harvard's council. And it's clear that it's a legislative decision. There were administrative decisions that were made below. But what's very important is the zoning board didn't make a decision. And under the city's own ordinance, it can't make a decision. The zoning board made a recommendation. And that recommendation has no effect until the city of Harvard either adopts or rejects the recommendation. What about the alternative argument of the city that even if we were to agree that Section 25 creates an independent cause of action, that the argument here, it just doesn't apply because that's not the type of relief your client was seeking? Honestly, I believe that that cuts a little bit too far. Because if you look at the statute, the statute talks about rezoning. And what they did is they essentially rezoned the use. They went from a two-family use to a single family use. So rezoning doesn't affect single households. Rezoning typically is for an area. I agree. So this was a specific two-way household, not a zoning action, correct? Correct. Although I believe that the statute can be read to some extent. Broad enough to cover this? I believe it can be broad enough to cover this. Because in essence, you, again, leave the plaintiffs in this situation without a remedy. Well, but even if you are correct that 25 creates a separate cause of action, in deference to the municipalities, shouldn't we strictly construe the language in Section 25 in favor of the municipality? I believe you can strictly construe it in deference to municipalities. Which would bar your claim. But you're also obligated to put the legislature's intent into effect as well. And I think that if you read the statute along with, again, Hawthorne and Supreme Court cases that talk about how these things are reviewed, I think it's clear that it was the legislature's intent to create a separate cause of action. What was the actual document that was filed before the zoning board? What was it called? The document that was filed before the zoning board was titled a petition. And what they were appealing was the zoning officer's decision in regards to the single-family use versus the two-family use. But it wasn't a petition or application for a special use, a variance, a rezoning or other amendment to the zoning ordinance, was it? No, it was not. And that being the case, why would, well, other than that might be the only path, but why would we even be talking about this authority or lack thereof when that's not the issue that was before Harvard at the administrative level and ultimately wasn't? You say they rezoned it. It was always zoned whatever Diggins Street is zoned. It just was used differently, so it was a nonconforming use. Correct. But I believe that it's, and again, I think if you read the statute and the petition that narrowly, it essentially leaves the plaintiff without a remedy in this situation. I guess the reality comes down to, well, if you call it a special use permit, then it fits because they were using it in a way that was not allowed to be used in other areas there. So a special use permit would fit. The rezoning, I would argue, can be interpreted broadly enough to cover this because they changed the zoning from the two-family to the one-family. Honestly, it really is closer to a special use permit because if someone were to come say, I've got a single-family house and I want to move it to a two-family house, I would have to go to the Harvard Zoning and Planning Board and ultimately the city council and say, I'd like to go from the one-family to a two-family here. I need a special use permit. This is the same thing in reverse. But you'd have to be giving notice to a lot of people, too, in order to go for this change. When you were just appealing, and there aren't words to properly describe what happened here, when you were appealing what the building officer did, you didn't have to give anybody notice, did you? No. And I think that the problem is that the statute was passed, or I should say statute, I apologize, the ordinance was passed after this area had been used as a two-family use. So there was no need to go through that whole special use permit to get there because it had been grandfathered in. And therefore, I think that becomes an issue because the city decided it was going to enact this ordinance and grandfather all these places in. So there was, of course, no opportunity. It's as if they had had a special use permit from the very beginning of the life of the ordinance. Thank you. Justice Burkett? No. Thank you. I guess we don't have any other questions. If you'd like to summarize your position? I won't go through all the facts and everything, obviously, you have right in front of you. But as I was going through and preparing for this this morning, I looked back at the comments of Judge Caldwell. And I think Judge Caldwell summed it up very ably when he said that he had never seen an individual who was more out of control of the way that their house was being used than Mr. Conahan. And I think that's true. I think your Honor is factually pointing out something very important. The city knew about this. And as your Honor had asked, and it happened to live in Harvard, there are two zoning code officers. It's Dexter Brannigan and Steve Sandler. Mr. Sandler is the hearing officer, the zoning officer in this case. They knew what was going on. They gave them an occupancy permit to allow them to continue doing what they were doing. And my clients expended a lot of time and a lot of money. And the only reason, as the record is clear, that they didn't get this done in time was because the insurance company stopped paying for the construction. And there's a dispute with the insurance company. What I really think it comes down to is intent. As your Honor had pointed out, there was never an intent to abandon the use. They always worked on the house. They always intended to use it as a two-family use. And indeed, the city of Harvard knew that they intended to use it as a two-family when they gave them the occupancy permit. And then they wait for another year before they do anything. And so it's another year of my client putting time and money and effort into this building when the city could have done something about it earlier. I think both legally and factually, the facts favor the plaintiff in this case. And I would ask that you affirm the judgment of the circuit court. Thank you for your time. Thank you. Mr. Zimmer. Thank you. First, in response to counsel's arguments regarding 11-13-25, Dunlop didn't need to go deep. Dunlop looked at the legislative history and determined that there was no intent to create a separate cause of action. Our savior case did not create, state that that act created a cause of action. As to other actions that the plaintiffs could have brought in this case, it's not the burden of the city to point out those other actions. The city's position was consistent throughout this case the entire time from the motion to dismiss to the summary judgment that 11-13-25, based on Dunlop and the legislative history, did not support an independent cause of action. You know, we as an appellate court are always about making sure we have a final order. And usually we're looking then at a 30-day window. Why does 13-25 create this 90-day? Doesn't this create something new, something different, and it's something that should be looked at? I mean, what's the purpose of putting it in this statutory authority if it doesn't create something? Because it's different than everything we know. It is different, and I can only speculate. One speculation for the 90 days would be the administrative review act gives 35 days. So let's say there's a zoning decision, and then the zoning decision isn't final. It has to go to the city council. Typically there's a ZBA meeting, and then two or three weeks later there's a city council meeting. So perhaps it creates 90 days to bring some of those other actions I talked about, the writ of cert, action for declaratory judgment, action under the Illinois Federal Constitution, perhaps it's to give more time after the passage of the final legislative act. That's what I would speculate. Would that have worked here? I mean, there were pretty significant gaps here, weren't there? There's no dispute. They filed this within the 90 days. That's never been an argument that it wasn't filed within 90 days. Our argument is what they filed under the one statute that they filed under did not create a cause of action. It just created a standard of review. And when you look at the legislative history, it supports our position that the intent of the state assembly was to just clarify the standard review after clarity. Would you agree that if the plaintiff had filed a deck action asking that this be declared unconstitutional and cited Section 25, that it would be a 90-day window to get into the courthouse? I mean, I guess my question ultimately is the city's action, the petition that was filed and the action taken by the city, does that fall under the parameters of Section 25? Notwithstanding it's not a private cause of action, but does it fall within that framework? I think the only thing that falls under that framework, though, would be the standard of review. That's the only thing- What about the 90 days? Because, I mean, Justice Hutchinson asked opposing counsel some very interesting questions about, you know, whether this action actually fit within a special use of variance or some other zoning amendment as set forth in Section 25. And, I mean, it's arguable it doesn't, because it really was not asking for any of those things. It was just an appeal, and I think you even pointed that out in your brief. So, let's say this was an egregious constitutional violation, and Section 25 doesn't apply by its terms, would that person then have to file within 30 days? What would the standard of review be there? I would read it as, as you look at the language of the certain zoning acts that the 11-13-25 apply to, that any of those actions- Otherwise appropriate actions. When you have 90 days to file, 90 days to file a death action, 90 days to file a violation of the Illinois Constitution, and if you didn't file within 90 days, then you'd be outside that statute of limitations to examine a zoning action. So, that's how I would argue it. So, let's say if counsel were to file, or his clients were to file the action, a writ of cert or a deck action that would have been outside those 90 days, then I would probably argue you violated the statute of limitations and pointed that to look at the statute of limitations. Are you conceding that Section 25 applies to these actions, applies to this petition and this ruling by the city, the ordinance that was filed by the city? No. I'm not asking you whether it's a private cause of action or an independent cause of action. I'm talking about, I mean, you just said that if they had a 90-day window, which would otherwise be, I guess, a 30-day window if you're just following general law, why would it apply to the 90-day window, but it wouldn't apply to the de novo review because it's not the same, one of those four new lists of things? Right. I wouldn't concede it because, you know, under this statute, it just points out application for special use, variance, rezoning, are there amendments to the zoning ordinance, shall be subject to the de novo review. It may be an argument. You know, I don't think I'd actually, I was responding to your question about that. I probably wouldn't make that argument. It probably, because of your position, this statute didn't apply, and that was the position that we took in our brief. It did not apply to what happened here because it was an appeal of a zoning office decision and not a petition for an application for special use. I think, Justice Burke, I mean, the focus is, Justice Burke's question is, does 25 apply to any action properly brought? In other words, the standard of review. Any legislative action. Any legislative action. Any legislative action. And that's what Clarence was, the court said in Clarence, which Justice Hutchinson wrote our decision in Clarence, that the city's actions were administrative because they were involved in zoning, I mean, intimately involved in the zoning decision, and section 25 was a direct response to Clarence saying it's de novo review for due process. So you agree that 25 would apply if there had been an action properly brought here? Correct. Further, in response, the trial court did not go through with those self-factors. The trial court simply said the zoning hearing officer's decision was arbitrary. Did not say the decision of the ZBA was arbitrary. The zoning hearing officer's decision was arbitrary. But we have to look at what happened after the zoning hearing officer's decision. Nine months later, they asked for an appeal. The city gave them an appeal. The city just didn't decide that the zoning officer was correct without giving the owners an opportunity to be heard. They had a 30-minute hearing. They were there with their lawyer. The ZBA considered those self-factors. The lot size was insufficient. The home was originally built as a single-family home. They considered and rejected the hardship arguments that the trial court found convincing. The ZBA heard all these things. The city's decision was not arbitrary by any means. It just did not believe that the owners' noncompliance with the code outweighed the factors favoring enforcement. Other factors showed the decision of the city was arbitrary. There was no extensions ever formally sought by the owners. The delay here was not days or months. The delay was years. And there was evidence. There was no amnesty from the city. The city was not out to get these guys. They were just upholding the code. All the law requires is the city to have a rational basis in their decision not to be arbitrary. Here, the city's decision was related to promoting its goals of the promotion of the most beneficial use of land. Therefore, based on the fact that this action was brought under 11-13-25, which does not create an independent clause of action, and even if this court feels that it does, the decision of the city was still proper under the noble standard review that these cases need to be examined. Thank you, counsel, for your arguments. I would make one comment to both of you. I know that there is an independent record, but these briefs are filed for a couple of reasons. One of them is to put in documents that may be necessary to use and easy to find. Nobody put the complaint in here. And since you were the appellant, you had the first shot. You were the affiliate. You had the second shot. And in the future, we welcome you and we invite you to come back, but we want the relevant documents in the briefs for easy review. Thank you for bringing that to my attention. I apologize. All right. We will stand adjourned now and go forth. Thank you.